# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Father Doe 246, on behalf of his minor child, Jane Doe 246, ) ) ) | |
| Plaintiff, ) ) | C.A. No.: 2:16-cv-224-PMD |
| v. ) ) | **ORDER** |
| Berkeley County School District and James Spencer, ) ) ) | |
| Defendants. ) ) | |

This matter is before the Court on Defendant James Spencer's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 6). For the reasons set forth herein, the Court grants Spencer's motion and dismisses Plaintiff Father Doe 246's claim against Spencer.

## BACKGROUND/PROCEDURAL HISTORY

Father's daughter, Jane Doe 246 ("Doe 246"), attended Marrington Middle School in Goose Creek, South Carolina from 2012 to 2014. During that time, Spencer was Marrington's principal.

Beginning in February 2013, Spencer received complaints that WW, one of Doe 246's male classmates, was sexually assaulting female classmates and engaging in other inappropriate sexual behavior. Doe 246, however, was not one of the students who WW had abused.

Spencer did little, if anything, in response. He did not properly investigate the complaints, he did not remove WW from the school or separate WW from female students, and he did not impose additional supervisory controls on WW that would have prevented further abuse. Instead, Spencer allowed WW to have "continued access to [Doe 246]" and other female

classmates for the remainder of the 2012–2013 school year. (Compl., ECF No. 1, at ¶ 59). Nevertheless, WW did not harm Doe 246 during the remainder of that school year.

In the summer of 2013, Spencer created the classroom assignments for the 2013–2014 school year. Spencer assigned Doe 246 and WW to the same classroom and, like the previous spring, declined to increase WW's supervision. That fall, WW sexually assaulted Doe 246.

Father has sued Spencer and the Berkeley County School District, contending that Spencer's "actions and inactions in the fall of 2013[] created for [Doe 246] the danger of being assaulted by WW." (Compl., ECF No. 1, at ¶ 21.) Father has asserted claims against the District for violation of Title IX, 20 U.S.C. § 1681 *et seq.*, and for gross negligence under state law. He has also asserted a claim against Spencer for violation of 42 U.S.C. § 1983.

Spencer moved to dismiss on April 11, 2016. Father filed a response in opposition on April 27. Spencer filed a reply on May 9. This matter is now ripe for consideration.

## **JURISDICTION**

The Court has subject matter jurisdiction over Father's federal-law claims pursuant to 28 U.S.C. § 1331. The Court exercises jurisdiction over Father's related state-law claim because it is so related to the federal-law claims that they form part of the same case and controversy. *See* 28 U.S.C. § 1367(a).

## **STANDARD OF REVIEW**

A motion to dismiss pursuant Rule 12(b)(6) for failure to state a claim "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Our courts use a "two-pronged approach" to assess a complaint's legal sufficiency. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the court identifies all of the complaint's factual allegations, assumes they are true, and construes all of their reasonable inferences in favor of the plaintiff. *E.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Then, it determines whether those presumed-true allegations "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint must demonstrate that the plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success. *Id.* Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Spencer argues he is entitled to qualified immunity, which is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Analyzing an assertion of qualified immunity involves two steps. First, the court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). If he has not, the analysis ends there because his § 1983 claim fails. *See id.* However, if he has, the court then "determine[s] whether that right was clearly established at the time of the alleged violation." *Id.* The answer to that second

3

question determines whether the defendant must defend against the § 1983 claim.  *See id.*  As explained below, Father's claim cannot survive the first step of the *Conn* analysis.

"Section 1983 imposes liability on state actors who cause the 'deprivation of any rights, privileges, or immunities secured by the Constitution.'"  *Doe v. Rosa*, 795 F.3d 429, 436 (4th Cir. 2015) (quoting 42 U.S.C. § 1983).  "[T]hese constitutional rights include a Fourteenth Amendment substantive due process right against state actor conduct that deprives an individual of bodily integrity.  Accordingly, state actions that result in sexual abuse of children can be actionable under § 1983."  *Id.* at 436–37 (internal citation omitted).

However, when a private actor perpetrates the sexual abuse, state actor liability for such harm "is significantly limited."  *Rosa*, 795 F.3d at 437.  The Due Process Clause, on which Father's § 1983 claim is based, does not "impose an affirmative obligation on the State" to "protect the life, liberty, and property of its citizens against invasion by private actors."  *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989).  "As a general matter, then, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *Id.* at 197; *see also id.* at 196–97 (stating that because "the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them").

*DeShaney* left open "two narrow circumstances" in which a state actor can be liable under § 1983 for privately caused harm.  *Rosa*, 795 F.3d at 437.  One of those circumstances arises in what is called the "state-created danger" doctrine.  *See id.* at 438.  Under the doctrine, a state actor is liable for actively creating or contributing to a dangerous situation that resulted in a private person harming the plaintiff.  *See Pinder v. Johnson*, 54 F.3d 1169, 1177 (4th Cir. 1995)

4

(en banc). Under such circumstances, the state actor is liable because his creation of, or contribution to, the danger is "akin to . . . directly causing harm to the injured party." *Id.* Father bases his § 1983 claim on this doctrine.

"[T]o establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Rosa*, 795 F.3d at 439. Affirmative conduct by the state actor is a key requirement of the doctrine. *Id.* at 440 (citing *Butera v. District of Columbia*, 235 F.3d 637, 650 (D.C. Cir. 2001)); *see also DeShaney*, 489 U.S. at 200 (observing "it is the State's affirmative act" that "trigger[s] the protections of the Due Process Clause"). Failing to defuse a preexisting danger is not an affirmative act under the doctrine. *See Rosa*, 795 F.2d at 440 (holding college president was not liable for state-created danger where, "at worst, he failed to take actions that might have removed [the victims] from an ongoing danger that had been present for a long time"); *Butera*, 235 F.3d at 650 ("No constitutional liability exists where the State actors 'had no hand in creating the danger but [simply] stood by and did nothing when suspicious circumstances dictated a more active role for them.'" (quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993)) (alteration in *Butera*)); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir. 1995) (affirming summary judgment where there was "no evidence that the Board took any *affirmative* action that exposed decedent to any danger to which she was not already exposed"). Moreover, affirmative conduct alone does not necessarily translate to liability. The conduct must either create the risk of private harm or increase that risk. *Rosa*, 795 F.3d at 439. Accordingly, an act that does not increase the risk of harm from a preexisting danger cannot trigger liability under the doctrine. *See id.* ("As *DeShaney* makes clear, allowing continued exposure to an existing danger by failing to intervene

5

is not the equivalent of creating or increasing the risk of that danger."); *Armijo ex rel. Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998) ("[I]f the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed."). These narrow contours of the state-created danger doctrine create a "demanding standard for constitutional liability." *Sargi*, 70 F.3d at 913; *see also Rosa*, 795 F.3d at 439 (stating that *DeShaney* and *Pinder* set "narrow limits" on the doctrine).

A recent opinion from this Court involving Spencer and WW demonstrates how demanding that standard is. *See Mother Doe 203 v. Berkeley Cty. Sch. Bd.*, No. 2:14-cv-3575-PMD, 2015 WL 5997121 (D.S.C. Oct. 14, 2015), *reconsideration and amendment denied*, slip op. (D.S.C. slip op. Dec. 7, 2015). In *Mother Doe 203*, WW molested Doe 203, another one of his female Marrington Middle School classmates, several times during the 2012–2013 school year. *Id.* at *1. After Doe 203's mother reported the abuse to Spencer in February 2013, Spencer "'made a conscious decision to not restrict the male student's contact with [Doe 203]'" for the remainder of the school year. *Id.* (quoting complaint). Then, for the 2013–2014 school year, Spencer allowed Doe 203 and her abuser to be in class together again. *Id.* Throughout the remainder of the 2012–2013 school year, and then during the 2013–2014 school year, WW continued to molest Doe 203. *Id.*

Doe 203's mother sued the District and Spencer, asserting a state-created danger § 1983 claim against Spencer. *Id.* Like Father in this case, the mother's theory was that Spencer "'created . . . the danger of enabling [WW]'s continuing access to'" Doe 203 after the February 2013 meeting and into the following school year. *Id.* at *4 (quoting complaint). This Court ruled that the mother had failed to allege a state-created danger claim. "Essentially," this Court

6

stated, "Mother's claim is that Spencer maintained the status quo for the rest of one school year and into the next one." *Id.* at *3. Because that conduct "neither created nor increased [Doe 203]'s preexisting risk of being harmed by" WW, the mother's state-created danger claim failed. *Id.*; *see also id.* at *4 ("Spencer is accused of letting classmates stay classmates. That neither created the danger of [Doe 203]'s abuse nor increased the risk of it."). Consequently, the Court dismissed the mother's § 1983 claim against Spencer. *Id.* at *5.

Father's claim is materially indistinguishable from the one this Court dismissed in *Mother Doe 203*. As in that case, the Complaint here alleges Spencer learned of a threat to his female students and decided not to quell that threat. That is maintaining the status quo, and, as this Court concluded in *Mother Doe 203*, "allowing the status quo to continue is not a state-created danger." *Id.* at *3.

Father argues *Mother Doe 203* is distinguishable because, unlike the victim in that case, WW did not abuse Doe 246 until after Spencer was warned about WW and after Spencer assigned WW and Jane Doe to the same class for the 2013–2014 school year. According to Father, the absence of prior attacks on Doe 246 means that when Spencer made the 2013–2014 assignments, he was not returning her to the same danger she had faced before Spencer learned of WW's proclivities. Rather, Father asserts, the assignment increased her risk of harm.

Father's argument equates risk of harm with harm itself. The state-created danger doctrine, however, distinguishes them and focuses on risk—that is, the "dangerous situation" that allows the private actor to inflict harm. *Pinder*, 54 F.3d at 1177. As the Fifth Circuit has explained,

> The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual *in a position of danger*, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid. Thus *the environment* created by the state

7

> actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create *an opportunity* that would not otherwise have existed for the third party's [acts] to occur.

*Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994) (internal citations and quotations omitted) (emphasis added). Accordingly, while actual harm that predates the state's actions is evidence—strong evidence—that the state neither created nor increased the risk of private harm, the occurrence *vel non* of such prior harm is not dispositive. Rather, the inquiry remains focused on whether the state actor's challenged conduct actually contributed to the dangerous environment that the private actor later exploited in order to harm the victim.

The Complaint in this case compels the Court to answer that question "no." Father alleges that, but for Spencer "assign[ing] students as he did in the fall of 2013 and . . . determining the type of supervision to provide WW in light of those student assignments, the opportunity WW *had* to assault [Doe 246] would not have existed in the fall of 2013, and would have *ended* in February, 2013." (Compl., ECF No. 1, at ¶ 59 (emphasis added)). The Court cannot ignore what this allegation recognizes: the danger—that is, "the opportunity WW had to assault [Doe 246]"—preexisted any of the actions on which Father bases his claim. Indeed, in the very next sentence of the Complaint, Father alleges that Spencer's supervision and student-assignment decisions provided WW "*continued* access to [Doe 246] . . . after February, 2013." (*Id.* at ¶ 60 (emphasis added)). These allegations undercut Father's contention that Spencer's choices made Doe 246's later assault more likely to happen than before Spencer learned of WW's behavior. Instead, they indicate that Spencer elected to keep Doe 246 exposed to a preexisting danger in the spring of 2013 and then returned her to it that fall. That is precisely what the plaintiff alleged, and this Court rejected, in *Mother Doe 203*. *See* 2015 WL 5997121 at *3 (citing *Armijo*, 159 F.3d at 1263).

8

Father next argues his case is distinguishable from *Mother Doe 203* because Spencer knew about WW's behavior before WW assaulted Doe 246. By contrast, in *Mother Doe 203*, the report of Doe 203's prior assaults is what brought that behavior to Spencer's attention. The Court fails to see why that distinction warrants a different outcome. As the Fourth Circuit stated in *Pinder*, "*DeShaney* rejected the idea that [an affirmative] duty can arise solely from an official's awareness of a specific risk . . . ." 54 F.3d at 1175 (citing *DeShaney*, 489 U.S. at 200).

Finally, Father contends his case is distinguishable because of the three "affirmative actions" Spencer undertook after he received the complaints about WW: (1) Spencer assigned Doe 246 and WW to be classmates for the 2013–2014 school year; (2) Spencer decided not to increase supervision of WW;[1] and (3) Spencer decided not to warn Doe 246 about WW's behavior. The first of these actions is identical to what was alleged in *Mother Doe 203*, and this Court held that Spencer could not be liable for it. The latter two "actions" are highly reminiscent of conduct that was unsuccessfully challenged in *Pinder* and in *Rosa*. In *Pinder*, a police officer's decision to file only minor criminal charges against Pittman, the plaintiff's physically abusive ex-boyfriend, resulted in Pittman being released from custody on the night of his arrest; a more serious charge would have kept him in custody longer. 54 F.3d at 1172. Later that night, he killed the plaintiffs' children. *Id.* In the ensuing § 1983 case against the officer, the Fourth Circuit held the officer's charging decision was "purely an omission," not an affirmative act. *Id.* at 1176. Later, in *Rosa*, a college president learned that ReVille, a counselor in the college's

---

1. It is not clear whether Father is alleging that Spencer himself decided WW's supervision level or that someone working for Spencer made that decision. The Complaint's languages points to both possibilities. For example, Father alleges "Spencer decided that WW's supervision would not include options to prevent him from having opportunities to sexually assault female students," (Compl., ECF No. 1, at ¶35(f)), but he also alleges that Doe 246's harm resulted from "the decisions chargeable to Spencer about the supervision to give WW," (*Id.* at ¶ 15). To the extent Father seeks to hold Spencer liable for a subordinate's supervision decisions, that theory lacks merit. *See Rosa*, 795 F.3d at 442 n.7 (noting that "[b]ecause principles of respondeat superior do not apply in imposing liability under § 1983," college president's supervisory authority over his subordinates could not make him liable for those subordinates' purported violations of plaintiffs' rights; rather, to impose § 1983 liability, president's "own individual actions" had to violate plaintiffs' rights (citations and quotation marks omitted)).

9

summer camp program, had molested campers.  *See* 795 F.3d at 432–33.  The president, however, chose to not report the abuse to the authorities.  *Id.* at 434–35.  The Fourth Circuit rejected the plaintiffs' attempt to characterize the president's conduct as an affirmative act under the state-created danger doctrine:

> Rosa's decision not to report ReVille is no different from the officer's decision not to file the more serious charges against Pittman.  As in *Pinder* . . ., the Does['] claim against Rosa is "purely an omission claim," and "[n]o amount of semantics can disguise the fact that the real 'affirmative act' here was committed by [ReVille], not by [Rosa]."

*Id.* at 441 (quoting *Pinder*, 54 F.3d at 1175–76).

In both *Pinder* and *Rosa*, the Fourth Circuit cautioned district courts to be wary of "'inaction . . . artfully recharacterized as action.'"  *Rosa*, 795 F.3d at 441 (quoting *Pinder*, 54 F.3d at 1176 n.*).  In this Court's view, the artfully recharacterized omissions in those cases are indistinguishable from the supervision and warning allegations in this case.  Spencer's decision to not require greater supervision of WW is no different than the *Pinder* police officer's decision to not file more serious criminal charges against Pittman, and Spencer's decision to not warn Doe 246 is no different than Rosa's decision to not report ReVille.  And, just as in those cases and in *Mother Doe 203*, the Complaint's frequent use of terms such as "create," "increase," and "affirmative act" does not transform Spencer's failure to do more for Doe 246 into state-created danger.  *See id.* ("The Does cannot 'sidestep' this problem by 'artfully recharacteriz[ing]' Rosa's conduct . . . ." (quoting *Pinder*, 54 F.3d at 1175–76 & n.*)); *Pinder*, 54 F.3d at 1175 ("No amount of semantics can disguise the fact that the real 'affirmative act' here was committed by [a private actor], not by [the defendant]. . . . [T]he state did not 'create' the danger, it simply failed to provide adequate protection from it."); *Mother Doe 203*, 2015 WL 5997121, at *4 ("Using the

10

words 'create' and 'increase' does not transform Spencer's omissions into state-created danger.").

In sum, the allegations in this case do not materially differ from those of *Mother Doe 203*. Father's Complaint simply uses different words to describe the same omissions at issue in that case. Accordingly, the result should be the same here as it was in *Mother Doe 203*. To be clear, though, the many parallels between the two cases have not controlled this Court's analysis. Rather, the Court has focused solely on whether the Complaint in this case, standing alone, alleges a state-created danger claim against Spencer. The Court has highlighted the many parallels between the two cases only to show why the Complaint fails to allege a state-created danger claim.

As in *Mother Doe 203*, the Court does not endorse Spencer's alleged course of conduct regarding WW. However, because Father has failed to allege that Spencer committed a Due Process violation, the Court must grant Spencer's motion to dismiss. The Court declines to address the second part of Spencer's qualified immunity argument. *See Rosa*, 795 F.3d at 442 n.10 (declining to address remainder of defendant's qualified immunity argument because plaintiffs failed to establish a violation of their constitutional rights).

## CONCLUSION

Therefore, for the foregoing reasons, it is **ORDERED** that Defendant James Spencer's motion to dismiss is **GRANTED**. Father's § 1983 claim is **DISMISSED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**May 31, 2016**
**Charleston, South Carolina**